E-FILED
Wednesday, 08 July, 2026  11:16:26 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| ANTONIO BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:25-cv-04213-SEM-DJQ |
| | ) | |
| MATTHEW PERRY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, in prison

at Pontiac Correctional Center, formerly incarcerated at Hill

Correctional Center, asserts claims based on occurrences at Hill.

### I.   MOTION TO REQUEST COUNSEL

Plaintiff's Motion to Request Counsel (Doc. 5) is before the

Court.

The Court undertakes a two-part inquiry: (1) whether the

plaintiff made a reasonable attempt to obtain counsel or has been

effectively precluded from doing so, and, if so, (2) given the difficulty

of the case, does the plaintiff appear competent to litigate it himself.

*Pruitt v. Mote,* 503 F.3d 647, 655 (7th Cir 2007). The Court must

consider the factual and legal difficulty of a plaintiff's claims, and

the plaintiff's competence to litigate them, while accounting for the plaintiff's literacy, communication skills, educational level, and litigation experience, plus the plaintiff's intellectual capacity and psychological history (if information on those topics is before the court). *Id.*

Plaintiff has not demonstrated a reasonable search for counsel (or that he has been prevented from making the attempt). Plaintiff attaches three letters to his motion, one from Uptown People's Law Center, one from the Wrongful Convictions Clinic at Northwestern, and one from Lovey and Lovey. They are all dated many months before this lawsuit was filed. They do not indicate that they relate to the incidents Plaintiff alleges, and Plaintiff is also pursuing federal suits in other Courts. Plaintiff must make a reasonable attempt to find an attorney specific to this lawsuit.

Plaintiff can document the attempt by providing law firms a copy of this Order along with a written request for representation in this specific case. If unsuccessful he can renew his motion, and attach the letters he sends, any responses received, and any additional information he wants the Court to consider regarding his ability to litigate this case.

Plaintiff's motion to request counsel is denied. He may renew it once he has made a reasonable effort to find an attorney for this specific lawsuit.

## II.    MERIT REVIEW

The case is before the Court for a merit review of Plaintiff's amended complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claims. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

<u>Defendants</u>

Plaintiff names as Defendants Correctional Officers Matthew R. Perry, Jackson Stanley, Bent, and Jamar A. Range; Correctional

Sergeants Stevenson and Downs; Correctional Lieutenant Jared H. Batson; Warden Tyrone L. Baker; and mental health professionals Natalie Main and Melissa Schenkel.

Factual Allegations

In December 2024, Defendant Perry told Plaintiff that "what we do" to grievance writers is to write them up for false tickets, promised he would do so to Plaintiff, and promised to attack him as well. In February 2025, Perry wrote Plaintiff a false disciplinary ticket. At the hearing on that ticket, Defendants Range and Batson did not call several witnesses, did not check camera footage, and did not note Plaintiff's full statement, and they recommended segregation time and demotion of grade which was signed off on by Warden Baker without a full investigation of the incident.

On May 18, 2025, Plaintiff asked Defendant Correctional Officer Stanley for a crisis team. Plaintiff was overwhelmed by his sister's death, and he felt suicidal. Stanley said that he called mental health staff person A. Rapp at 5:30 p.m. and that Rapp had two hours to respond. Plaintiff alleges these were "lies." Plaintiff waited, then Plaintiff started pressing the intercom button, an officer in the control room opened the door, Plaintiff walked out to

talk to Defendant Sergeant Stevenson about an update about receiving mental health care for his crisis, and Stevenson said "I don't know," and ordered Plaintiff to wait for Stanley to report back since Stanley was the one Plaintiff talked to about the issue earlier.

Defendant Perry then came up behind Plaintiff as he was waiting for Stanley, asked Plaintiff if he was trying to assault staff (which Plaintiff denied), and Plaintiff said that Stevenson gave him a direct order to wait for an update from Stanley regarding a crisis team. Perry told Plaintiff to turn around, and Plaintiff said no. Perry grabbed Plaintiff's handcuffs and twisted them aggressively, causing unbearable pain and audible bone pops. Perry then smashed Plaintiff's face against the control room window. Stevenson was present, did not stop Perry, and joined Perry's use of unreasonable force against Plaintiff. Perry walked Plaintiff to segregation still twisting Plaintiff's arms and wrists in handcuffs and punching Plaintiff.

Plaintiff then asked Sergeant Linden for a crisis team, and apparently Linden promptly called for mental health because Rapp then came to Plaintiff's segregation cell. Rapp told Plaintiff no one had called her earlier. Rapp properly assessed Plaintiff, and

Defendant M. Schenkel (supervisor of all mental health staff at Hill) put Plaintiff on thirty-minute suicide watch.

The next day, May 19, mental health staff Defendant Natalie Main took Plaintiff off crisis watch even though Plaintiff said that he did not want to leave watch and was still feeling suicidal based on losses in his family, his mental state, and being afraid of retaliation by staff.

Defendant Bent told Plaintiff that he trashed some of Plaintiff's property. Plaintiff called for a crisis team again because his missing phone book included personal information, addresses, and his SSN, he was missing 13,000 pages of medical records, and he was missing various hygiene items and clothing.

Defendant Sergeant Downs contacted Defendant Schenkel regarding a crisis team for Plaintiff, and Schenkel responded that Plaintiff did not need one. Plaintiff then swallowed a pair of nail clippers and hanged himself with a sheet in his segregation cell.

As Plaintiff was hanging in his cell, Defendant Sergeant Downs pepper sprayed him. Plaintiff lost consciousness. He regained consciousness in St. Mary's hospital due to hanging himself and

swallowing the nail clippers. He was transferred to another hospital and was hospitalized for seven days.

Analysis – Claims Plausibly Alleged

Plaintiff states a First Amendment Retaliation claim against Perry, Eighth Amendment excessive force claims against Perry and Stevenson (for their use of force in moving Plaintiff on May 18), against Downs (for pepper spraying Plaintiff as he was hanging by a sheet in his cell), Eighth Amendment claims for deliberate indifference to a serious mental health need and deliberate indifference to an imminent risk of self-harm against Main (for taking Plaintiff off suicide watch when she knew he was still suicidal), and Schenkel (for ignoring Plaintiff's need for immediate return to crisis care).

Analysis – No Other Claims Plausibly Alleged

**Due process.** Plaintiff's due process allegations do not state a claim. When an inmate is placed in conditions more restrictive than those in the general prison population, "his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cty. Jail,* 718 F.3d 689, 691

(7th Cir. 2013); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (plaintiff's six months and one day in disciplinary segregation did not implicate liberty interest as he was allowed yard time and weekly showers and was not deprived of all human contact or sensory stimuli); *see also Singh v. Gegare*, 651 F. App'x 551, 555 (7th Cir. 2016) (plaintiff's 105 days in disciplinary segregation did not implicate liberty interest as "he was permitted several hours of yard time and several showers each week, as well as authorized to leave his cell for visits and appointments").

Here, Plaintiff has not alleged that his conditions in segregation were particularly harsh compared to ordinary prison life, which is, by definition, harsh and difficult. Because he has not alleged a deprivation of a protected liberty interest, he has also not stated a plausible claim for a due process violation against Perry (for writing the ticket), or Range, Batson, or Baker (for their manner of adjudicating it).

**Warden Baker.** Plaintiff also generally alleges Baker should be held liable based on his supervisory authority over the employees at the prison. These allegations do not state a claim against Warden Baker. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) ("[I]n

order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation.").

**Defendant Stanley.** Plaintiff does not state a claim against Stanley. Plaintiff's allegation is that Stanley said he had contacted mental health for a crisis response for Plaintiff, but that mental health worker Rapp said that no one had called her earlier. Assuming that it is true that Stanley told Plaintiff he had called for a crisis team but had not yet done so, that does not support a plausible claim for a violation of the United States Constitution. There is no indication that Plaintiff was facing an imminent threat at the time he first spoke with Stanley, or that Stanley ignored Plaintiff's needs, as opposed to Stanley appropriately balancing his other job duties alongside Plaintiff's crisis request. Plaintiff was not entitled to an immediate response, and without more information about how this initial interaction with Stanley harmed Plaintiff, this claim is insufficient to proceed.

**Property.** Plaintiff alleges Bent destroyed his property. Under the Supreme Court decisions *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984), "persons who complain

about the unauthorized loss or destruction of their property must seek compensation in state court rather than under §1983. (*Parratt* dealt with negligent deprivations; *Hudson* extended its holding to intentional deprivations.)" *Lyons v. Dart*, 901 F.3d 828, 830 (7th Cir. 2018). And in Illinois, a prisoner has an adequate remedy available to him in the Illinois Court of Claims. *See Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993) (citing 705 ILCS 505/8). Plaintiff has not alleged a plausible federal claim against Bent for destroying his property.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [5] is DENIED without prejudice to Plaintiff re-filing it after attempting to find an attorney for this case, on his own, as discussed above.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states a First Amendment Retaliation claim against Perry, Eighth Amendment excessive force claims against Perry and Stevenson (for their use of force in moving Plaintiff on May 18), against Downs (for pepper spraying Plaintiff as he was hanging by a sheet in his cell), Eighth Amendment claims for deliberate indifference to a serious mental health need and deliberate indifference to an imminent risk of self-harm against Main (for taking Plaintiff off suicide watch when she knew he was still suicidal), and Schenkel (for ignoring Plaintiff's need for immediate return to crisis care). Clerk to terminate Defendants Stanley, Bent (or Bert as it appears on the**

docket), Range, Batson, and Baker. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3. This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.

4. The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

6. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all

defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

7. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, discovery requests and responses are NOT filed with the clerk. Plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.

8. Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.

9. The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.

10. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Page **12** of **13**

Entered this 8th day of July, 2026.

*s/Sue E. Myerscough*

SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
